## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TAMMY JOHNSON, individually and on behalf of others similarly situated, | Case No.: 3:21-cv-00009 |
| Plaintiff, | CLASS ACTION |
| v. | |
| MIDWESTERN PET FOODS, INC., an Indiana Corporation. | **COMPLAINT AND JURY DEMAND** |
| Defendant. | |

Plaintiff Tammy Johnson ("Plaintiff" or "Plaintiff Johnson") hereby files this Complaint on behalf of herself and all others similarly situated, by and through the undersigned attorneys, against Midwestern Pet Foods, Inc., (hereinafter, "Midwestern" or "Defendant") and alleges as follows based upon personal knowledge as to herself and her own acts and experiences; and, as to all other matters, upon information and belief based upon, *inter alia*, investigations conducted by her attorneys.

## INTRODUCTION

1.     This is a class action lawsuit brought by Plaintiff on behalf of herself and a class of purchasers of dog and cat food manufactured by Midwestern Pet Foods, Inc. (hereinafter, "Midwestern Pet Food" or "Products"), marketed and distributed by the Defendant, which contain Aflatoxin, a toxin produced by the

mold variety *Aspergillus flavus.*

2.     The Midwestern Pet Food includes Products branded as Pro Pac, Splash Fat Cat, Nunn Better, Sportstrail 50, and Sportmix.

3.     Defendant touts that it has been "making high-quality pet food & treats" for generations.[1]

4.     Despite Defendant's claim that its Products are high quality, when pets ingest the Pet Food that is contaminated with Aflatoxin, it can result in serious medical peril, including vomiting, loss of appetite, jaundice, diarrhea, colitis, liver damage, and death.[2]

5.     According to the FDA, "As of January 11, 2021, FDA is aware of more than 70 pets that have died and more than 80 pets that are sick after eating Sportmix pet food."[3]

6.     Based on Midwestern's own pre-sale representations about health testing and quality control measures, *infra*, it knew or should have known about the

---

[1] https://midwesternpetfoods.com/.

[2] FDA Alert: Certain Lots of Sportmix Pet Food Recalled for Potentially Fatal Levels of Aflatoxin, https://www.fda.gov/animal-veterinary/outbreaks-and-advisories/fda-alert-certain-lots-sportmix-pet-food-recalled-potentially-fatal-levels-aflatoxin (last visited Jan. 14, 2021).

[3] FDA Alert: Certain Lots of Sportmix Pet Food Recalled for Potentially Fatal Levels of Aflatoxin, https://www.fda.gov/animal-veterinary/outbreaks-and-advisories/fda-alert-certain-lots-sportmix-pet-food-recalled-potentially-fatal-levels-aflatoxin (last visited Jan. 14, 2021). Not all of these cases have been officially confirmed as aflatoxin poisoning through laboratory testing or veterinary record review. This count is approximate and may not reflect the total number of pets affected.

Aflatoxin contamination in the Midwestern Pet Food.

7.     Upon information and belief, Defendant failed to disclose and/or actively concealed the known Aflatoxin contamination in the Midwestern Pet Food and its health risk to consumers' pets.

8.     As a result of Defendant's business practices, Plaintiff's and Class members' purchases of Midwestern Pet Food have caused them to suffer an ascertainable loss of money and/or property.

9.     Had Plaintiff and other Class members known about the Aflatoxin contamination of Midwestern Pet Food at the time of purchase, they would not have purchased the Midwestern Pet Food, or would have paid substantially less for it, and would have avoided the significant out-of-pocket expenses of providing veterinary care to their pets as a result of their purchase of Midwestern Pet Food.

10.     As a result of the Midwestern Pet Food contamination and the considerable monetary costs associated with attempting to treat related symptoms in their pets, Plaintiff and Class members have suffered injury in fact, incurred damages and have otherwise been harmed by Defendant's conduct.

11.     Accordingly, Plaintiff brings this action to redress Defendant's violations of various state and federal consumer protection statutes, and to recover for Defendant's breach of express and implied warranties, common law fraud and unjust enrichment.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant transacts business in this District, maintains its corporate headquarters in this District, is subject to personal jurisdiction in this District, and therefore is deemed to be a citizen of this District. Additionally, Defendant has advertised in this District and has received substantial revenue and profits from its sales of Midwestern Pet Food in this District; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this District.

14.     This Court has personal jurisdiction over Defendant because: Defendant's corporate headquarters is located in this District; Defendant is registered with the Indiana Secretary of State as a for-profit corporation permitted to operate in Indiana; Defendant conducts substantial business in the District; a

substantial part of the acts and omissions complained of occurred in this District; and Defendant has intentionally and purposefully placed Midwestern Pet Food into the stream of commerce within Indiana and throughout the United States.

## THE PARTIES

### Plaintiff Tammy Johnson

15.    Plaintiff Tammy Johnson ("Plaintiff" or "Johnson") is a citizen of the State of Georgia, and currently resides in Eastman, Georgia.

16.    Plaintiff owns seven dogs, of which six are adult dogs, and one is a six-month old puppy.

17.    For approximately two years, Johnson has purchased two types of Midwestern Pet Foods for her animals – SPORTMiX for her adult dogs, and SPORTMiX Puppy Small for her puppy. She has generally purchased the Products from Tractor Supply in Eastman, Georgia.

18.    Prior to purchasing Midwestern Pet Food products, Plaintiff reviewed and relied upon information furnished by Defendant, which did not disclose or mention the health risks resulting from the Aflatoxin contamination of the Products. Plaintiff viewed this information on the Midwestern Pet Food packaging as well as on Defendant's website.

19.    During the week of January 3, 2021, Plaintiff noticed health problems arising in several of her dogs, including vomiting and diarrhea.  The dogs who had

gotten sick recovered on their own after several days of illness.

20.     On January 13, 2021, Plaintiff's puppy remained ill, so she contacted her veterinarian's office, Ocmulgee Veterinary Clinic in Eastman, Georgia, and was advised that he needed treatment for colitis. Based on this advice, Plaintiff purchased Metronidazole 250mg tablets from her veterinarian to treat her puppy's colitis.

21.      Plaintiff has been advised by her veterinarian that the puppy will also have to undergo future testing for liver damage as a result of the colitis.

22.     After receiving this diagnosis, Plaintiff returned the product to Tractor Supply, where she had purchased it, and bought a more expensive brand, Purina dog food, and paid the difference out-of-pocket.

23.     Neither the Defendant, nor any of its agents, dealers or other representatives, informed Plaintiff of the existence of the Aflatoxin contamination of the Products prior to purchase. Had Defendant disclosed the contamination to Plaintiff, Plaintiff would not have purchased Midwestern Pet Food, and would have avoided the veterinary and other costs resulting from its use.

24.     Plaintiff has suffered an ascertainable loss as a result of Defendant's omissions and/or misrepresentations associated with the Aflatoxin contamination of the Products, including, but not limited to, the out-of-pocket expenses and loss associated with the medical and veterinary expenses resulting from the Products,

and the cost of replacement dog food.

**Defendant Midwestern Pet Foods, Inc.**

25.     Defendant Midwestern Pet Foods, Inc., is a domestic for-profit corporation registered to do business in Indiana with its principal place of business located at 9634 Hedden Road, Evansville, Indiana, 47725, USA.[4]

26.     Defendant designs, manufactures, distributes, sells and warrants pet foods, including Products branded as Pro Pac; Splash Fat Cat; Nunn Better; Sportstrail 50; and SPORTMiX.

27.     Upon information and belief, Defendant develops the Products' directions, marketing materials, ingredient composition, safety guides, and other accompanying product information for Midwestern Pet Food.

28.     Defendant engages in continuous and substantial business throughout the United States, including in Indiana.

**FACTUAL ALLEGATIONS**

**A.     The Aflatoxin Contamination in Midwestern Pet Food**

29.     Midwestern Pet Foods, Inc. has been in business since 1926.[5] It sells numerous lines of pet food including SPORTMiX and other brands.

---

[4] Public Business Search, INDIANA SECRETARY OF STATE, https://bsd.sos.in.gov/PublicBusinessSearch/BusinessFilings (search term: "Midwestern Pet Foods") (last visited Jan. 14, 2020).
[5] MIDWESTERN PET FOODS – ABOUT US, https://midwesternpetfoods.com/#about-us (last visited Jan. 14, 2021).

30.     Defendant touts that it creates its "own nutritious dry recipes and treats and prepare[s its] foods in . . . 4 family-owned kitchens."[6]

31.     In December 2020, the Food and Drug Administration ("FDA") reported that certain Midwestern Pet Food products produced in Defendant's Oklahoma production facility were contaminated with Aflatoxin.[7]

32.     Aflatoxin is a mold-borne toxin which can contaminate grains, nuts, and corn when they are inappropriately stored in conditions which facilitate fungal growth.[8] Aflatoxin is a formidable toxin and carcinogen which poses severe health risks to humans and animals.[9]

33.     On December 30, 2020, Defendant issued a recall for many products in the Sportmix line, including certain lots of:

    a.  Sportmix Energy Plus (50 lb. and 44 lb. bags)

    b.  Sportmix Premium High Energy (50 lb. and 44 lb. bags)

    c.  Sportmix Original Cat (31 lb. and 15 lb. bags)[10]

---

[6] https://midwesternpetfoods.com/.

[7] FDA ALERT: CERTAIN LOTS OF SPORTMIX PET FOOD RECALLED FOR POTENTIALLY FATAL LEVELS OF AFLATOXIN, https://www.fda.gov/animal-veterinary/outbreaks-and-advisories/fda-alert-certain-lots-sportmix-pet-food-recalled-potentially-fatal-levels-aflatoxin (last visited Jan. 14, 2021).

[8] C.D. WILLIAMS & H. JAESHKE, FUNGAL HEPATOXINS (2011).

[9] C.D. WILLIAMS & H. JAESHKE, FUNGAL HEPATOXINS (2011).

[10] "Company Announcement: Midwestern Pet Foods Voluntarily Recalls Pet Food Recall for Aflatoxin Health Risk" (Dec. 30, 2020), attached as Exhibit A; *see also,* FDA ALERT: CERTAIN LOTS OF SPORTMIX PET FOOD RECALLED FOR POTENTIALLY FATAL LEVELS OF AFLATOXIN, https://www.fda.gov/animal-veterinary/outbreaks-and-advisories/fda-alert-certain-lots-sportmix-pet-food-recalled-potentially-fatal-levels-aflatoxin (last visited Jan. 14, 2021).

34.    On January 11, 2021, Defendant expanded this recall to include certain lots of:

    a.  Pro Pac Adult Mini Chunk

    b.  Pro Pac Performance Puppy

    c.  Splash Fat Cat 32%

    d.  Nunn Better Maintenance

    e.  Sportstrail 50

    f.  Sportmix Maintenance

    g.  Sportmix High Protein

    h.  Sportmix Stamina

    i.  Sportmix Bite Size

    j.  Sportmix High Energy

    k.  Sportmix Premium Puppy[11]

35.    As a result of the Aflatoxin contamination of Midwestern Pet Foods, the Products are unreasonably dangerous and unsuited for the ordinary and intended purpose of providing nutrition to pets.

---

[11] "Company Announcement: Midwestern Pet Foods Voluntarily Expands Recall of Pet Food for Aflatoxin Health Risk" (Jan. 11, 2021), attached as Exhibit B; *see also,* FDA ALERT: CERTAIN LOTS OF SPORTMIX PET FOOD RECALLED FOR POTENTIALLY FATAL LEVELS OF AFLATOXIN, https://www.fda.gov/animal-veterinary/outbreaks-and-advisories/fda-alert-certain-lots-sportmix-pet-food-recalled-potentially-fatal-levels-aflatoxin (last visited Jan. 14, 2021).

**B.**     **Defendant's Knowledge of the Contaminated Products**

36.     At all times relevant to this Complaint, including prior to recalling the Product and selling it to Plaintiff and Class Members, Defendant was or should have been aware of the problems with the Midwestern Pet Food.

37.     As a seasoned manufacturer with almost a century of experience in making pet foods, Defendant analyzes the nutritional content of its products, and conducts testing, including health and nutrition testing, on all of its products.

38.     Defendant touts the nutrition and safeguards of its Products in statements such as:

    a.    "Midwestern Pet Foods has quality control personnel and laboratories at each plant to test incoming ingredients and finished products. This ranges from managing guarantees, to testing things like degree of cook and microbial confirmation for release. All of our plants are FSMA-ready and follow the GMP regulations as put out through FSMA and the FDA. Additionally, all of our safety technicians follow all OSHA and state regulations."

    b.    "All SPORTMIX foods are designed to provide complete and balanced nutrition and meet Association of American Feed Control Officials (AAFCO) requirements."

    c.    "When introducing a new product, Association of American Feed

Control Officials (AAFCO) feeding trials are completed at a farm with an in-home atmosphere that is non-invasive, non-lethal and cage-free."[12]

39.     Through these quality control measures, Defendant knew or should have known that the Midwestern Pet Food at issue was unsafe for pet consumption.

40.     Plaintiff and Class members were without access to the information concealed by Defendant as described herein, and therefore reasonably relied on Defendant's representations and warranties regarding the quality, nutrition, and safety of Midwestern Pet Food. Had Plaintiff and Class members known of the contamination and the potential harm posed by Midwestern Pet Food, they would have taken steps to avoid that harm and/or not have purchased the Products at all.

41.     Despite Defendant's knowledge of the Aflatoxin contamination of Midwestern Pet Food, it failed to either notify Plaintiff and Class members of the nature and extent of the problems with the Product or to provide an adequate remedy.

## CLASS ACTION ALLEGATIONS

42.     Plaintiff brings this action on her own behalf, and on behalf of the following Class pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Class consists of the following:

---

[12] SPORTMIX – FAQ, https://www.sportmix.com/faq/ (last visited Jan. 14, 2021)

**Nationwide Class:**

All persons or entities in the United States who purchased Midwestern Pet Foods that were subject to Defendant's December 30, 2020 and/or January 11, 2021 recalls.

and/or, in the alternative,

**Georgia Class:**

All persons or entities in Georgia who purchased Midwestern Pet Foods that were subject to Defendant's December 30, 2020 and/or January 11, 2021 recalls.

and/or, in the alternative,

**Indiana Class:**

All persons or entities in Indiana who purchased Midwestern Pet Foods that were subject to Defendant's December 30, 2020 and/or January 11, 2021 recalls.

43.     Together, the Nationwide Class, the Georgia Class, and the Indiana Class will be referred to collectively as the "Class." Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that purchased Midwestern Pet Food for resale, and the Judge(s) assigned to this case. Plaintiff reserves the right to modify, change or expand the Class definition.

44.     Numerosity: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiff only through

the discovery process, Plaintiff believes that hundreds or thousands of contaminated Products have been sold in each of the states that are the subject of the Class.

45. <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

  a. whether the Midwestern Pet Food purchased by Plaintiff and Class is or was affected by Aflatoxin contamination;

  b. whether Defendant knowingly failed to disclose the existence and cause of the Aflatoxin contamination on Midwestern Pet Food and its adverse medical effects on pets;

  c. whether Defendant's conduct violates the Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10-1-390, *et seq*;

  d. whether Defendant's conduct violates the Georgia Uniform Deceptive Trade Practices Act, Ga. Code Ann. §§ 10-1-370, *et seq.*;

  e. whether Defendant's conduct violates the Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1, *et seq.*;

  f. whether Defendant is strictly liable for the state statutory violations;

  g. whether Defendant's conduct constitutes negligence;

h.  whether Defendant's conduct constitutes a breach of express warranty;

i.  whether Defendant's conduct constitutes a breach of implied warranty;

j.  whether Defendant's conduct constitutes common law fraud;

k.  whether Defendant's conduct constitutes unjust enrichment; and

l.  whether Plaintiff and Class members are entitled to monetary damages and/or other remedies and, if so, the nature of any such relief.

46.  <u>Typicality</u>: All of Plaintiff's claims are typical of the claims of the Class since Plaintiff purchased contaminated Midwestern Pet Food, as did each member of the Class. Furthermore, Plaintiff and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable loss arising out of Defendant's wrongful conduct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all absent Class members.

47.  <u>Adequacy</u>: Plaintiff is an adequate representative because her interests do not conflict with the interests of the Class that she seeks to represent, she has retained counsel competent and highly experienced in complex class action litigation, and she intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and her counsel.

48.   <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class to individually and effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation also increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendant's sale information and records, and FDA complaints and communications.

49.   Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## VIOLATIONS ALLEGED

### COUNT I
### VIOLATIONS OF GEORGIA FAIR BUSINESS PRACTICES ACT
**(Ga. Code Ann. §§ 10-1-390, *et seq.*)**
**(Brought on Behalf of the Georgia Class)**

50.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

51.     Defendant is a "person" as defined by the Georgia Fair Business Practices Act ("Georgia FBPA"). Ga. Code Ann. § 10-1-392(a)(24).

52.     Plaintiff and Class Members are "consumers" within the meaning of the Georgia FBPA. Ga. Code Ann. § 10-1-392(a)(6).

53.     The purchase of Midwestern Pet Food by Plaintiff and Class Members constituted "consumer transactions" as defined by the Georgia FBPA. Ga. Code Ann. § 10-1-392(a)(10).

54.     The Georgia FBPA declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, Ga. Code Ann. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, or benefits that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," id. §§ 10-1-393(b)(5), (7) & (9).

55.     Defendant represents on its website that it thoroughly tests its products to ensure consumer satisfaction including in statements such as:

a.   "Midwestern Pet Foods has quality control personnel and laboratories at each plant to test incoming ingredients and finished products. This ranges from managing guarantees, to testing things like degree of cook and microbial confirmation for release. All of our plants are FSMA-ready and follow the GMP regulations as put out through FSMA and the FDA. Additionally, all of our safety technicians follow all OSHA and state regulations."

b.   "All SPORTMIX foods are designed to provide complete and balanced nutrition and meet Association of American Feed Control Officials (AAFCO) requirements."

c.   "When introducing a new product, Association of American Feed Control Officials (AAFCO) feeding trials are completed at a farm with an in-home atmosphere that is non-invasive, non-lethal and cage-free."

56.     By failing to disclose the Aflatoxin contamination of the Product to Plaintiff and Class Members, Defendant violated the Georgia FBPA because Defendant represented that Midwestern Pet Food had characteristics and benefits that it does not have, and represented that the Products were of a particular

standard, quality, or grade (*i.e.,* nutritious, balanced, etc.) when they were of another. *See* Ga. Code Ann. §§ 10-1-393(b)(5) & (7).

57.   Defendant advertised the Products as nutritious and of a good quality, with the intent not to sell them as advertised, in violation of § 10-1-393(b)(9).

58.   Defendant's unfair and deceptive acts or practices occurred repeatedly in Midwestern's course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and as a result, caused economic harm to owners and purchasers of Midwestern Pet Food.

59.   Through its product testing, Defendant knew or should have known about the defective nature of the Midwestern Pet Food.

60.   Defendant was under a duty to Plaintiff and Class Members to disclose the defective nature of the Product, because:

   a.   Defendant was in a superior position to know the true state of facts about Midwestern Pet Food.

   b.   Plaintiff and Class Members could not reasonably have been expected to learn or discover that the Midwestern Pet Food was contaminated until it actually caused adverse health effects in their pets; and

   c.   Defendant knew that Plaintiff and Class Members could not reasonably have been expected to learn or discover that the

Midwestern Pet Food was contaminated until it actually caused adverse health effects in their pets.

61.     Defendant knew or should have known that its conduct violated the Georgia FBPA.

62.     In failing to disclose the defective nature of Midwestern Pet Food, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

63.     The facts Defendant concealed from Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Product. Moreover, a reasonable consumer would consider the contamination to be an undesirable quality, as Plaintiff and Class Members did. Had Plaintiff and Class Members known about the contamination, they would not have purchased the Product.

64.     Plaintiff and Class Members, like all objectively reasonable consumers, did not expect their pet food purchase to be contaminated. It is a reasonable and objective consumer expectation for consumers to expect pet food not to poison their pets.

65.     As a result of Defendant's misconduct, Plaintiff and Class Members have been harmed and suffered actual damages including veterinary bills, medical

expenses, replacement pet food, and emotional anguish resulting from death or illness of a cherished pet.

66.     As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff and Class Members suffered and will continue to suffer actual damages in that they have experienced and may continue to experience ongoing medical expenses, and emotional anguish, due to damage to their pets' health.

67.     Defendant's violations present a continuing risk to Plaintiff and to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

68.     Thus, pursuant to Ga. Code Ann. § 10-1-399, Plaintiff seeks, in addition to equitable relief, actual and statutory damages, attorneys' fees and expenses, treble damages, and punitive damages as permitted under the Georgia FBPA and applicable law.

**COUNT II**
**VIOLATIONS OF THE GEORGIA**
**UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(Ga. Code Ann. §§ 10-1-370, *et seq.*)**
**(On Behalf of the Georgia Class)**

69.      Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

70.     Plaintiff brings this claim on behalf of herself and the Georgia Class.

71.     Defendant, Plaintiff, and Class members are "persons" within the meaning of Georgia's Uniform Deceptive Trade Practices Act ("Georgia UDTPA"). Ga. Code Ann. § 10-1-371(5).

72.     The Georgia UDTPA prohibits "deceptive trade practices" which include the "misrepresentation of standard, quality, or grade of goods and services," "engaging in any other conduct which similar creates a likelihood of confusion or misunderstanding," and "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, or benefits that they do not have," and "[a]dvertising goods or services with intent not to sell them as advertised." Ga. Code Ann. § 10-1-372.

73.     By failing to disclose the defective nature of the Product to Plaintiff and Class Members, Defendant engaged in deceptive trade practices in violation of the Georgia UDTPA, because Defendant represented that the Class Vehicles had characteristics and benefits that they do not have, and represented that the Class Vehicles were of a particular standard, quality, or grade (*i.e.* nutritious and high-quality, etc.) when they were of another. See Ga. Code Ann. §§ 10-1- 372(5), (7), (9).

74.     Defendant advertised Midwestern Pet Food as nutritious and of high quality, with the intent not to sell the Products as advertised, in violation of Ga. Code Ann. § 10-1-372(12). Defendant's unfair and deceptive acts or practices

occurred repeatedly in Defendant's course of trade or business, were material, were capable of deceiving a substantial portion of the purchasing public, and as a result, caused economic harm on owners and purchasers of Midwestern Pet Food.

75.     Through Defendant's product testing, it knew or should have known about the defective nature of Midwestern Pet Food.

76.     Defendant was under a duty to Plaintiff and Class Members to disclose the defective nature of the Product, because:

a.  Defendant was in a superior position to know the true state of facts about Midwestern Pet Food.

b.  Plaintiff and Class members could not reasonably have been expected to learn or discover that Midwestern Pet Food was contaminated until it actually caused adverse health effects in their pets; and

c.  Defendant knew that Plaintiff and Class members could not reasonably have been expected to learn or discover that Midwestern Pet Food was contaminated until it actually caused adverse health effects in their pets.

77.     Thus, Defendant knew or should have known that its conduct violated the Georgia UDTPA.

78.     In failing to disclose the defective nature of the Product, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

79.     The facts Defendant concealed from Plaintiff and Class Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Product. Moreover, a reasonable consumer would consider the contamination to be an undesirable quality, as Plaintiff and Class Members did. Had Plaintiff and Class Members known that about the contamination, they would not have purchased the Product.

80.     Plaintiff and Class Members, like all objectively reasonable consumers, did not expect their pet food purchase to be contaminated. It is a reasonable and objective consumer expectation for consumers to expect pet food not to harm their pets.

81.     As a result of Defendant's misconduct, Plaintiff and Class members have been harmed and suffered actual damages including veterinary bills, medical expenses, replacement pet food, and the loss of pets for which they had paid.

82.     As a direct and proximate result of Defendant's unfair or deceptive acts or practices, Plaintiff and Class members suffered and will continue to suffer actual damages in that they have experienced and may continue to experience ongoing medical expenses, and the loss of pets for which they had paid.

83.     The violations of UDTPA by Defendant present a continuing risk to Plaintiff, Class members, and to the general public. Defendant's unlawful acts and practices complained of herein affect the public interest.

84.     Plaintiff seeks an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia UDTPA and applicable law.

## <u>COUNT III</u>
## VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
### (Ind. Code §§ 24-5-0.5-1, *et seq.*)
### (Brought on Behalf of the Indiana Class)

85.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

86.     The Indiana Deceptive Consumer Sales Act, Indiana Code §§ 24-5-0.5-1, *et seq.* prohibits unfair and deceptive acts, omissions or practices in connection with consumer transactions acts, including, *inter alia,* the following, whether made orally, in writing, or by electronic communication:

> (b) (1) That such subject of a consumer transaction has . . . performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have.
> (2) That such subject of a consumer transaction is of a particular standard, quality, . . . if it is not and if the supplier knows or should reasonably know that it is not.
> . . .
> (11) That the consumer will be able to purchase the subject of the consumer transaction as advertised by the supplier, if the supplier does not intend to sell it.

Ind. Code § 24-5-0.5-3.

87.     The sale and distribution of Midwestern Pet Food to members of the

Indiana Class constitutes "consumer transactions" as defined by the Indiana

Deceptive Consumer Sales Act, Indiana Code § 24-5-0.5-2.

88.     Defendant engaged in unlawful conduct in violation of the Indiana

Deceptive Consumer Sales Act by making knowing and intentional omissions.

Defendant knowingly failed to disclose the Aflatoxin contamination of Midwestern

Pet Food in order to secure the sale of the Products, and to offer them at a premium

price.

89.     Defendant represents on its website that it thoroughly tests its

products to ensure consumer satisfaction including in statements such as:

    a.  "Midwestern Pet Foods has quality control personnel and laboratories

        at each plant to test incoming ingredients and finished products. This

        ranges from managing guarantees, to testing things like degree of

        cook and microbial confirmation for release. All of our plants are

        FSMA-ready and follow the GMP regulations as put out through

        FSMA and the FDA. Additionally, all of our safety technicians follow

        all OSHA and state regulations."

    b.  "All SPORTMIX foods are designed to provide complete and

        balanced nutrition and meet Association of American Feed Control

Officials (AAFCO) requirements."

c.  "When introducing a new product, Association of American Feed

Control Officials (AAFCO) feeding trials are completed at a farm

with an in-home atmosphere that is non-invasive, non-lethal and cage-

free."[13]

90.    These statements are false and misleading because Defendant sold

Midwestern Pet Food despite Aflatoxin contamination.

91.    Defendant did not fully and truthfully disclose to its customers the

true nature of the inherent defect in Midwestern Pet Food which was not readily

discoverable until after purchase. As a result, Indiana Class members were

fraudulently induced to purchase Midwestern Pet Food that had been contaminated

by Aflatoxin along with all of the resultant actual and potential problems. These

facts that Defendant concealed were solely within its possession.

92.    Defendant intended that Indiana Class members rely on the acts of

concealment and omissions, so that they would purchase the Product.

93.    The Indiana Class actually relied on Defendant's misrepresentations

and omissions alleged herein which caused the Indiana Class to purchase the

Products. Defendant's conduct caused Indiana Class members to suffer an

---

[13] SPORTMIX – FAQ, https://www.sportmix.com/faq/ (last visited Jan. 14, 2021).

ascertainable loss. In addition to direct monetary losses, Indiana Class members have suffered an ascertainable loss by receiving less than what was promised.

94.    A causal relationship exists between Defendant's unlawful conduct and the ascertainable losses suffered by the Indiana Class. Had the Aflatoxin contamination of the Products been disclosed, consumers would not have purchased Midwestern Pet Food.

95.    The Indiana Class did not receive the benefit of their bargain as a result of Defendant's conduct.

96.    Defendant's unlawful acts, omissions or practices complained of herein affect the public interest. As a direct and proximate result of Defendant's violations of the Indiana Deceptive Consumer Sales Act, the members of the Indiana Class have suffered injury-in-fact and/or actual damage.

97.    By engaging in the acts, omissions or practices discussed above, including, but not limited to, the sale and distribution of the contaminated Product, Defendant has violated Ind. Code § 24-5-0.5-3.

98.    Pursuant to Ind. Code § 24-5-0.5-4, the Indiana Class seeks actual damages, treble damages, attorneys' fees, and any other just and proper relief as provided under the Indiana Deceptive Consumer Sales Act.

## COUNT IV
## STRICT LIABILITY
**(Brought on Behalf of the Nationwide Class, or Alternatively, On Behalf of the Georgia and/or Indiana Class)**

99.     Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

100.   Plaintiff and the Class incorporate by reference the preceding and subsequent paragraphs as if fully set forth herein.

101.   Defendant is engaged in the business of designing, manufacturing, maintaining, inspecting, testing, marketing, packaging, labeling, selling and/or distributing pet food.

102.   Defendant designed, manufactured, inspected, tested, marketed, packaged, labeled, sold and/or distributed Midwestern Pet Food product to Plaintiff and Class Members.

103.   At the time the Products left the possession, custody and control of Defendant, Defendant knew or had reason to know of the use and purpose for which Midwestern Pet Food was intended.

104.   At the time the Products left the possession, custody and control of Defendant, Defendant knew or had reason to know that selling, supplying and/or distributing defective Midwestern Pet Food would cause the Product to become inherently dangerous for users thereof, including Plaintiff and Class members, and

thus Defendant owed a duty of care and skill in the design, manufacture, inspection, testing, marketing, packaging, labeling, selling, and/or distribution of Midwestern Pet Food, and to further exercise ordinary and reasonable care to ascertain that the Products were reasonably fit, suitable and safe for their intended and reasonably foreseeable purposes.

105.   At the time the Products left the possession, custody and control of Defendant, Defendant had a duty to exercise reasonable care in issuing adequate and sufficient instructions and warnings regarding the proper use of Midwestern Pet Food, along with the hazards posed by defects within the Products.

106.   At the time the Product left the possession, custody and control of the Defendant, Midwestern Pet Food was in an unreasonably dangerous and defective condition and was unfit, unsuitable and unsafe for its intended purposes.

107.   Defendant failed to inform Plaintiff and Class members regarding Midwestern Pet Food's Aflatoxin contamination.

108.   As a direct, proximate and foreseeable result of the aforesaid negligent, careless, willful, wanton, malicious, grossly negligent and/or reckless acts and/or omissions of Defendant, acting by and through its agents, servants and/or employees in the course and scope of their employment, contaminated Midwestern Pet Food was purchased and used by Plaintiff and Class members, causing foreseeable harm to their pets.

## COUNT V
## NEGLIGENCE
**(Brought on Behalf of the Nationwide Class, or Alternatively, On Behalf of the Georgia and/or Indiana Class)**

109.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

110.   Defendant owed Plaintiff and Class members a duty to provide safe and nutritious food for their pets.

111.   Defendant acted with a lack of care towards Plaintiff and Class members through its acts and omissions, including: maintaining, inspecting, testing, marketing, packaging, labeling, selling and/or distributing pet food that was unsafe.

112.   By failing to exercise ordinary care through its acts and omissions, Defendant caused harm to Plaintiff and Class members.

113.   Because of Defendant's breach of its duty of care, Defendant foreseeably caused harm to Plaintiff and Class members.

## COUNT VI
## BREACH OF EXPRESS WARRANTY
**(Brought on Behalf of the Nationwide Class, or Alternatively, On Behalf of the Georgia and/or Indiana Class)**

114.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

115.   Defendant warrants its products as "100% guaranteed for taste and nutrition."[14]

116.   Defendant breached this express warranty by selling to Plaintiff and Class members Midwestern Pet Food known to suffer from the Aflatoxin contamination so that it was not nutritious, not of high quality, and which was unsuited for its ordinary and intended purpose, while refusing to cover the cost of medical and veterinary bills resulting from the contamination.

117.   As a result of Defendant's actions, Plaintiff and Class members have suffered economic damages including but not limited to veterinary bills, other medical expenses, and replacement pet food.

118.   Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendant's conduct described herein.

<u>COUNT VIII</u>
**BREACH OF IMPLIED WARRANTY**
**(Brought on Behalf of the Nationwide Class, or Alternatively, On Behalf of the Georgia and/or Indiana Class)**

119.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

120.   A warranty that Midwestern Pet Food was in merchantable condition

---

[14] SPORTMIX – FAQ, https://www.sportmixcom/faq/ (last visited Jan. 14, 2021)

is implied by law.

121.   The Products, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which pet food is used.  Specifically, Midwestern Pet Food is inherently defective in that it is contaminated with a potent fungal toxin and thus cannot safely be fed to pets.

122.   As a direct and proximate result of Defendant's breaches of the implied warranty of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

## COUNT IX
## COMMON LAW FRAUD
**(Brought on Behalf of the Nationwide Class, or Alternatively, On Behalf of the Georgia and/or Indiana Class)**

123.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

124.   Defendant made material omissions concerning a presently existing or past fact. For example, Defendant did not fully and truthfully disclose to its customers that Midwestern Pet Food had been contaminated by Aflatoxin, which was not readily discoverable by Plaintiff and Class members until after Midwestern Pet Food was purchased and ingested by their pets. As a result, Plaintiff and the other Class members were fraudulently induced to purchase Midwestern Pet Food with the contamination and all of the resultant problems.

125.   These omissions were made by Defendant with knowledge of their

falsity, and with the intent that Plaintiff and Class members rely upon them.

126.   Plaintiff and Class members reasonably relied on these omissions, and suffered damages as a result.

## COUNT X
## UNJUST ENRICHMENT
**(On Behalf of the Nationwide Class, or Alternatively, On Behalf of the Georgia and/or Indiana Class)**

127.   Plaintiff incorporates by reference all allegations of the preceding paragraphs as though fully set forth herein.

128.   Plaintiff and members of the Class conferred a benefit on the Defendant.

129.   Defendant had knowledge that this benefit was conferred upon it.

130.   Defendant has been and continues to be unjustly enriched at the expense of Plaintiff, and its retention of this benefit under the circumstances would be inequitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and members of the Class, respectfully requests that this Court:

A.    determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class as defined above;

B.    appoint Plaintiff as the representative of the Class and her counsel as

Class Counsel;

C.      award all actual, general, special, incidental, statutory, punitive, and

consequential damages to which Plaintiff and Class members are

entitled;

D.      award pre-judgment and post-judgment interest on such monetary

relief;

E.      grant appropriate injunctive and/or declaratory relief;

F.      award reasonable attorney's fees and costs; and

G.      grant such further relief that this Court deems appropriate.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED:  January 15, 2021                    Respectfully Submitted,


                                            /s/ *Scott D. Gilchrist*
                                            Scott D. Gilchrist
                                            COHEN & MALAD, LLP
                                            One Indiana Square, Suite 1400
                                            Indianapolis, IN 46204
                                            Phone: 317.636.6481 (ext. 271)
                                            Facsimile:  317.636.2593
                                            Email: sgilchrist@cohenandmalad.com

Joseph G. Sauder
Lori G. Kier
SAUDER SCHELKOPF, LLC
1109 Lancaster Avenue
Berwyn, PA 19312
Phone: 888.711.9975
Facsimile: 610.421.1326
Email: jgs@sstriallawyers.com
Email: lgk@sstriallawyers.com

***Attorneys for Plaintiff and
the Putative Class***